UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BARBARA L.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 3:20cv987 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d), and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months.

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

. . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022. (Exhibit 6D).

2

2. The claimant has not engaged in substantial gainful activity since July 31, 2017, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.). (Exhibit 6D-9D).

3. The claimant has the following severe impairments: Meniere's disease and positional vertigo, chronic alcoholism, and a probable old and small periventricular infarct with unspecified cerebrovascular small vessel disease. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to lifting, carrying, pushing and pulling twenty-five pounds frequently and fifty pounds occasionally. The claimant can sit at least six to eight hours in an eight-hour workday and stand and/or walk six to eight hours in an eight hour work day. The claimant should not climb ropes, ladders, or scaffolds. The claimant can frequently kneel, crouch, and crawl. The claimant can frequently bend and stoop in addition to what is required to sit. The claimant can frequently use ramps and stairs. Aside from use of ramps and stairs on a frequent basis, the claimant should not work upon uneven surfaces. The claimant can perform the balance required of such activities. The claimant should avoid work within close proximity to open and exposed heights and open and dangerous machinery such as open flames and fast moving exposed blades. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes and gases and excessive heat, humidity and cold such as when working outside or within a sawmill, boiler room, chemical plan [sic], green house, refrigerator unit or sewage plant. Work should not be performed in a very loud work environment such as Level 5. Contact with supervisors still involves necessary instruction. Prolonged conversation is not necessary for task completion.

6. The claimant is capable of performing past relevant work as a can perform both [sic], hand packager DOT 920.587-018, SVP 2, medium per the DOT and as performed; and automobile assembly line worker DOT 806.367-010, SVP 4, medium per the DOT and light as performed. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

3

(Tr. 17-28).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on September 27, 2021. On November 8, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on December 8, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 4 was the determinative inquiry.

On August 29, 2017, Plaintiff filed for DIB and SSI alleging disability in both applications on July 31, 2017. The claims were denied initially, upon reconsideration and after a hearing held on February 25, 2020 before ALJ William D. Pierson, via video conference. On April 1, 2020,

4

ALJ Pierson issued an unfavorable decision. (Tr. 12-28).The Appeals Council denied Plaintiff's request for review of this decision, rendering it the Agency's final decision for purposes of judicial review. 20 C.F.R. §404.981, 416.1481.

Plaintiff was born on July 8, 1960. She was 57 years old at her onset date and considered to be of advanced age. (Tr.100); 20 C.F.R. §404.1563. Plaintiff had a body mass index ("BMI") of 33. (Tr.716).

Prior to her onset date, Plaintiff treated for issues of senile nuclear sclerosis, hypermetropia, and presbyopia, (Tr. 428-29). She suffered from an acute exacerbation of chronic vertigo, chronic disequilibrium, alcohol hepatitis, alcohol use disorder and uncontrolled hypertension with VNG testing normal. (Tr. 440, 455). In December 2016, she was released back to work by Dr. A. Bancroft. (Tr. 460). She continued to have dizziness and walk sideways like she was drunk and treated at the emergency room for a diagnosis of dizziness and orthostatic hypotension. (Tr. 474). Plaintiff was scheduled for vestibular rehabilitation and balance training. (Tr. 486). She had impaired function, balance and gait in physical therapy. (Tr. 490, 493). A carotid Doppler showed less than 50% stenosis in right carotid arteries, partly calcified atherosclerotic disease and less than 50% stenosis in left carotid arteries. (Tr. 505). A MRI of the brain confirmed multiple lesions which were concerning for a demyelinating disease. A cervical MRI showed spinal canal stenosis at C6-7 which could cause cervicogenic dizziness. (Tr. 509, 531). A cervical spine X-ray showed severe degenerative disc disease. (Tr. 536). Plaintiff had a mildly ataxic gait. (Tr. 511-12). From a neurological perspective, she could return to work. (Tr. 513). Plaintiff complained of memory issues and forgetfulness, attributable to stress. (Tr. 548, 550). An August 2018 X-ray of the right knee confirmed mild osteoarthritis. (Tr. 676). Plaintiff underwent a consultative examination ("CE") by Carol Singler, PhD, with impression of an

5

adjustment disorder with depressed mood. (Tr. 681). Plaintiff reported that she did not do anything for enjoyment, played games on her phone, moved in with daughter, did dishes, laundry and vacuumed. (Tr. 680).

In March 2019, Plaintiff complained of decreased hearing, vertigo and Meniere's disease and depression was confirmed along with obesity. (Tr. 716). For depression, Plaintiff was medicated with Zoloft and Bupropion. Plaintiff took Meclizine for dizziness and her daughter reported she leaned to her side when she walked. Sometimes Plaintiff had nausea. She also reported decreased hearing in both ears. (Tr.. 719). In April 2019 Plaintiff treated for recurrent vomiting and was taking over the counter Nexium twice per day with no relief. She had chronic dizziness and was given prochlorperazine. (Tr. 699-704). In July 2019 Plaintiff fell out of a folding chair while fishing and suffered from severe pain to the left arm and face. She broke her left small finger and right facial bones. (Tr. 793-810). Plaintiff continued to treat for chronic dizziness due to Meniere's Disease. She also had chronic alcoholism, dizziness, hearing loss and hypertension. (Tr. 732-34).

At the hearing, Plaintiff testified that her doctor did not complete her long-term disability forms. (R. 865-66). Plaintiff stated she was always dizzy, (Tr. 866), and whenever she moved a lot, she would get nauseous and have to run to bathroom and vomit. (Tr. 867). Plaintiff stated she had slowed down on drinking a few months ago to a glass of wine a night. (Tr. 868-69). Plaintiff claimed she had neck problems all the time but her doctors could give her no treatment. (Tr. 870-71). Plaintiff reported progressive hearing loss, but no one recommended hearing aids. (Tr. 873). Plaintiff disagreed with the contention that her vertigo had improved and the implication she filed for disability only because her work shut down. (Tr. 876).

In support of remand, Plaintiff first argues that the ALJ's finding that she could do her

6

previous work was in conflict with the specific demands of that work. Plaintiff claims that the hand packager job requires an individual to frequently work around extreme heat, and her RFC limits her to no excessive heat. Plaintiff further contends that the automobile assembly worker job would require dealing with people, and her RFC limits her to jobs that do not require prolonged conversation.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a hand packager, DOT 920.587-018, SVP 2, medium and unskilled per the DOT as actually performed; and automobile assembly line worker, DOT 806.367-010, SVP 4, medium and semiskilled per the DOT and light as performed (Tr. 27, 909-11). The ALJ stated, "this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity… the above work is past relevant work because it was done during the period at issue, was done long enough for the claimant to learn to do it, and was done at substantial gainful activity levels" (Tr. 27).

The ALJ based this determination on the testimony of the VE who testified that an individual with Plaintiff's RFC could perform her past relevant work as a hand packager and automobile assembly line worker as actually performed (Tr. 27, 909-11). The ALJ determined that Plaintiff could perform the jobs as they were actually performed and not as generally performed as described in the DOT (Tr. 27, 909-11).

Social Security Ruling 00-4p allows ALJs to assume that a VE who swears under oath that his testimony is consistent with the DOT is telling the truth, requiring further inquiry only if the VE says that his testimony is not consistent with the Dictionary or if the conflict is so obvious as to alert the ALJ. *Ehler v. Colvin*, No. 3:14-CV-1855, 2015 WL 5098507, at *2 (N.D. Ind. Aug. 28, 2015); *Hofer v. Astrue*, 588 F. Supp. 2d 952, 967 (W.D. Wis. 2008).

With respect to the hand packager job, ALJ found that Plaintiff could perform the job as actually performed, not generally performed per the DOT description (Tr. 27). Plaintiff testified to how she actually performed the job, and never mentioned dealing with extreme heat (Tr. 39-42). Plaintiff argues that no one asked her about the temperature levels of this job at the hearing. Yet, Plaintiff still doesn't explicitly say that her previous job required her to deal with heat, extreme or otherwise. Moreover, Plaintiff was represented by counsel at the hearing and counsel did not elicit any testimony on this point. Thus, there is no evidence of conflict with the DOT.

With respect to Plaintiff's contention that a conflict existed with the automobile assembly line worker job because it required dealing with people, Plaintiff is attempting to link interaction and prolonged conversation. Plaintiff does not cite anything within the DOT job description or her own testimony to support her speculation that the assembly job would require prolonged conversation. Thus, the ALJ reasonably relied on the VE's expertise in the industry to find Plaintiff could perform her past relevant work as actually performed, and Plaintiff fails to identify any conflict that the ALJ failed to resolve.

Plaintiff argues that the ALJ was required to specifically ask the VE if his testimony conflicted with information provided in the DOT, as required by SSR 00-4p. *See Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Ccir. 2006)(ALJ must ask VE if analysis conflicts with the DOT). However, the transcript of the hearing shows that the ALJ told the VE "and you understand if you provide information that conflicts with the DOT, you advice [sic[ of the conflict in the basis for your opinion." The VE responded "Yes." (Tr, 93). The VE did not advise of any conflict, even though he was under an ongoing duty to do so if such conflict existed. This is sufficient to satisfy the requirements of SSR 00-4p. As the ALJ reasonably relied on testimony from the VE to find that Plaintiff could perform her past relevant work as actually performed, there is no basis for

8

remand on this issue.

Next, Plaintiff argues that the ALJ improperly discounted her credibility and symptoms, and failed to explore the reasons why Plaintiff failed to obtain treatment or follow a treatment plan, such as lack of insurance. Relatedly, Plaintiff contends that the ALJ improperly assessed her RFC and also failed to properly consider her obesity.

Plaintiff contends that the ALJ did not adequately consider her balance issues, vertigo, dizziness, and nausea in the formulation of the RFC. Specifically, Plaintiff argues that her issues with balance and vertigo fail to support an ability to be on her feet for 6 hours per day and lift 25 pounds frequently. However, the ALJ carefully considered Plaintiff's severe impairments and associated symptoms (Tr. 15-28). As discussed in detail below, while recognizing Plaintiff's Meniere's disease and positional vertigo were severe impairments, the ALJ pointed to treatment records which generally reflected normal overall findings despite her symptoms; no reports of joint or muscle pain; no observed difficulties with ambulation during evaluations; radiology reports reflecting only mild to moderate findings regarding hearing loss; a one-year gap in treatment during 2018, with no reported treatment for vertigo or other symptoms; and vertigo medication taken at times only on an as needed basis (Tr. 20-28, 38, 358, 508, 509, 511, 695-75). Nevertheless, the ALJ still included limitations within the RFC such as limitations to climbing, walking on uneven terrain, and exposure to heights to accommodate Plaintiff's symptoms of dizziness and vertigo. (Tr. 20).

The ALJ acknowledged Plaintiff's long-term complaints of vertigo, dizziness, and tinnitus dating back to 2016. (Tr. 21, 454-81). The ALJ noted that in December 2016, Plaintiff underwent an audiogram which revealed only mild to mid high frequency hearing loss and her symptoms were considered vague. (Tr. 21, 358). The ALJ acknowledged Plaintiff's January 2017

9

radiology reports which revealed degenerative disc disease of the cervical spine with canal stenosis, neuroforaminal stenosis, and reversal of normal curvature. (Tr. 21, 482-87, 507-37). As the ALJ noted, despite these findings, neck pain and related upper extremity issues were not reflected as ongoing complaints or assessed as deficits requiring treatment. (Tr. 22). The ALJ then pointed to March 2017 treatment records where Plaintiff demonstrated overall normal findings, no reports of joint or muscle pain, and no neck tenderness, but a slightly swaying gait and some arm tremor. (Tr. 21, 485). Specifically, in March 2017 Plaintiff presented for care with complaints of dizziness, unsteadiness, and worsening concentration, but denied arm weakness. (Tr. 22, 508). However, upon examination Plaintiff demonstrated overall normal findings despite slightly swaying gait, mild ataxia, and inability to heel and toe walk. (Tr. 22, 508-09). The ALJ also referred to May 2017 treatment notes where Plaintiff's treating physician, Dr. Hassan Arif, M.D., stated that Plaintiff's symptoms had improved, she was not taking medication, and she was able to function without any problems. (Tr. 22, 511). Dr. Arif also noted that Plaintiff was able to return to work from a neurological point of view. (Tr. 513)

In August 2017, Plaintiff was treated by Nabil Abdo, M.D., for complaints of chronic vertigo, dizziness, vomiting, as well as involvement in a motor vehicle accident one day prior. (Tr. 22, 561-64). She was diagnosed with benign positional vertigo and instructed to return in six months. (Tr. 22, 561-64). In March 2018, Plaintiff sought treatment for a leg rash. (Tr. 23, 629-75). The ALJ noted that upon examination Plaintiff did not demonstrate symptoms of vertigo, made no complaints of vertigo, and did not appear be in any acute distress. (Tr. 22, 629-75). The ALJ also noted that there was no ongoing treatment for dizziness, vertigo, or nausea for the remainder of 2018. (Tr. 23).

In March 2019 Plaintiff presented with complaints of depression, dizziness, worsening

10

hearing, and hypertension. (Tr. 23, 719-721). The ALJ also noted that Plaintiff reported using Meclizine on an as needed basis only. (Tr. 23, 719). Upon examination, Plaintiff did not demonstrate any acute distress, difficulties ambulating, or use of any assistive device while ambulating. (Tr. 23, 721). In April 2019 Plaintiff was diagnosed with recurrent vomiting but noted that she had just cut back on drinking. (Tr. 23, 703). The ALJ noted that while Plaintiff alleged dizziness, she indicated that she did not want to take a trip to Indianapolis for a neurology appointment. (Tr. 23, 703). The ALJ pointed to treatment records showing that Plaintiff had no neurological complaints such as numbness or tingling; had no deficits in cognitive/emotional function; and was not reported to use any assistive device, furniture, walls, or people for balance, standing, or ambulation. (Tr. 23, 703, 720). In July 2019 Plaintiff presented at the emergency room following a fall. (Tr. 24, 13F). Plaintiff did not report any neck pain, upper extremity complaints, deficits related to dizziness, and her neurological examination was within normal limits. (Tr. 24, 13F).

In October 2019, Plaintiff reported that she had not seen a neurologist in two years, denied numbness and tingling, and admitted to almost daily alcohol consumption. (Tr. 24, 755). Upon examination, Plaintiff did not appear to be in any acute distress; her mood, affect, and cognition were normal; she did not demonstrate any deficits in balance or gait; and did not show a need for an assistive device to maintain gait, balance, or ambulation. (Tr. 24, 755). Considering the above, it is clear that the ALJ's findings were supported by the treatment records.

The ALJ also considered the opinions of the State agency medical consultants who also found Plaintiff to be able to work at the medium exertional level. (Tr. 27, 108-09, 122-27). In January 2018, State agency medical consultant Shayne Small, M.D., reviewed the record and determined that Plaintiff had the following limitations: frequently kneel, crouch, and crawl;

occasionally climb ramps and stairs, balance, and stoop; never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and all exposure to hazards. (Tr. 108-09, 122-27).

In June 2018, State agency medical consultant Joshua Eskonen, D.O., reviewed the record and added the following limitations: lift and /or carry 50 pounds occasionally and 25 pounds frequently; sit, stand or walk 6 out of 8 hours; unlimited pushing and pulling; frequent balancing, stooping, kneeling, crouching, and crawling; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; avoid concentrated exposure to extreme cold, heat, humidity, noise, fumes, odors, dusts, gases, poor ventilation; and avoid even moderate exposure to hazards. (Tr. 139-41, 155-59).

The ALJ noted that despite Plaintiff's claims of limitations, multiple examinations by treating health care providers were largely unremarkable and did not suggest significant deficits described by Plaintiff or limitations of function greater than those suggested in the RFC. (Tr. 27). The ALJ found the opinions of the State agency examiners to be generally persuasive, somewhat consistent with and supported by the record. (Tr. 27, 139-41, 155-59). Thus, along with the treatment record summarized above, the opinions of the State agency medical examiners support the ALJ's RFC finding.

The ALJ also considered Plaintiff's subjective allegations in his evaluation of the record. (Tr, 25, 862). Plaintiff reported experiencing dizziness daily, blurred vision constantly, and poor hearing. (Tr. 26, 862). However, as the ALJ noted, Plaintiff was not observed having poor balance, dizziness, or ambulating or balancing using an assistive device after July 2017. (Tr. 26, 703, 720, 721). The ALJ also pointed to Plaintiff's testimony that she worked until July 2017, when the building closed. (Tr. 25, 857). The ALJ then pointed to evidence such as Plaintiff's July

12

2018 psychological consultative evaluation where Plaintiff confirmed that she was not taking medication for vertigo. (Tr. 26, 680, 880). Regarding Plaintiff's reports of blurred vision, the ALJ noted that despite Plaintiff's reports of daily blurred vision, she had not had any appointments with any vision provider, or any follow up with neurology. (Tr. 26, 880-82). Thus, the ALJ adequately considered Plaintiff's subjective allegations. (Tr. 26).

Plaintiff argues that the ALJ failed to consider how her obesity might affect her neck pain, dizziness, and vertigo or account for mobility issues in sitting, standing, or walking. As the ALJ stated, Plaintiff's treatment records generally reflected normal overall findings; she was not observed having difficulties with ambulation; she demonstrated strength within normal limits; and did not report joint or muscle pain. (Tr. 27, 703, 720, 720). Additionally, Plaintiff's physicians noted her weight to be 94.3kg and her Body Mass Index to be 33.41 kg/m2 but did not note any associated limitations. (Tr. 720). Moreover, Plaintiff did not allege any specific limitations due to her obesity. (*See* Tr. 320 (alleging disability due to chronic vertigo, ringing in ears, depression)). During her psychological consultative examination, Plaintiff reported that no physician had spoken to her about a need to lose weight (Tr. 24, 680). *Dornseif v. Astrue*, 499 F. App'x 598, 600 (7th Cir. 2013) (noting that the plaintiff did not mention her obesity at any juncture of her application process, until she briefed her case in federal court). Thus, at most, the ALJ committed harmless error as discussion of Plaintiff's obesity would not have changed the outcome of the decision. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (recognizing that remand from harmless error is a "waste of time" where the error would not change the outcome of the ALJ's decision).

Plaintiff contends that the ALJ erred in failing to properly consider her inability to afford health care which she claims explains her inconsistent medical treatment. However, Plaintiff testified that she was not currently taking any medication for her dizziness, and was not currently

13

requesting additional treatment for her dizziness. (Tr. 24, 882, 906). Plaintiff also admitted she did not take medicine or treatment for her neck pain because "there's nothing that they can do." (Tr. 58). Plaintiff also testified that during portions of the period at issue she had insurance through the Healthy Indiana Plan (HIP), a public assistance type insurance. (Tr. 902-908). Plaintiff then testified that she had not been seeking treatment since she had HIP insurance. (Tr. 907). This testimony at least implies that Plaintiff's lack of insurance was not the reason she didn't seek regular treatment. The ALJ repeatedly tried to nail down exactly when Plaintiff had insurance and when she didn't have insurance. (Tr. 902-908). Plaintiff's answers were not particularly helpful as she kept changing her answers and then stated she was confused and didn't remember why she didn't get treatment. (Tr. 907). Based on the record evidence, the ALJ reasonably found that Plaintiff's inability to recall whether she had insurance was an indication that her issues were not limiting enough to cause her to look into treatment, insurance coverage, or other sources for obtaining care. (Tr. 24). The ALJ noted that Plaintiff's testimony indicated that she was not aware of any difficulties obtaining treatment due to lack of insurance. (Tr. 25). Thus, the ALJ's consideration of Plaintiff's lack of insurance was reasonable. *Walker v. Colvin*, 4:16-cv- 33, 2016 WL 7383806, at *5 (N.D. Ind. Dec. 20, 2016) (rejecting Plaintiff's argument that the ALJ's failure to consider the reasons for her lack of treatment warranted remand, where Plaintiff failed to articulate any concrete reasons for sporadic and minimal treatment).

      Accordingly, for all the above reasons, the decision will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: December 13, 2021.

s/ William C. Lee
William C. Lee, Judge
United States District Court
